IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION



| | |
|---|---|
| Barbara Bartholomew; Tricia Brown; Sherry Campbell-Drewery; Janet Flecher; Gloria Gardner; Lauren Garland; Patricia Hedgecock; Bonnie McKelvey; Lular Parker; Judy Parsons; Robert Renix; Laura Walter, and Claudia Williams,<br><br>                                     Plaintiffs,<br>v.<br><br>Indevus Pharmaceuticals, Inc., F/K/A Interneuron Pharmaceuticals, Inc.; Wyeth, Inc., F/K/A American Home Products Corporation; Wyeth Pharmaceuticals, Inc. F/K/A Wyeth-Ayerst Pharmaceuticals, Inc., a Division of American Home Products Corporation; and Boehringer Ingelheim Pharmaceuticals, Inc.,<br><br>                                     Defendants. | CIVIL ACTION<br>No.<br>1:04-cv-11188-GAO |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO REMAND

### BACKGROUND

On March 31, 2004, plaintiffs filed a complaint in Massachusetts Superior Court, Middlesex County, against the defendant, Indevus Pharmaceuticals, Inc., f/k/a Interneuron Pharmaceuticals, Inc. ("Indevus"), a Massachusetts company that designed and marketed the diet drug dexfenfluramine ("Redux"). The complaint also names as defendants Wyeth, Inc. f/k/a American Home Products Corporation; Wyeth Pharmaceuticals, Inc. f/k/a Wyeth-Ayerst Phamaceuticals, Inc., a Division of American Home Products Corporation (collectively referred to as "Wyeth"); and Boehringer Ingelheim Pharmaceuticals, Inc. ("Boehringer"). Plaintiffs seek to recover damages for valvular heart disease ("VHD") and associated injuries caused by their ingestion of Redux. *See Ex. 1*, Complaint.

On June 3, 2004, Wyeth removed this action from Middlesex Superior Court to this Court on the purported ground that Indevus was a "sham" defendant that was fraudulently joined in order to preclude federal jurisdiction over this case. However, Wyeth admits that the real purpose of its removal is to gain a tactical advantage by attempting to obtain a stay of proceedings and, ultimately, to have the action transferred to the MDL court. Because Indevus is a proper defendant, and because Wyeth cannot satisfy the stringent burden required to prove fraudulent joinder, this case should be remanded to the Massachusetts Superior Court, plaintiffs' forum of choice.

1. **The Massachusetts Consolidated Actions.**

Subsequent to the filing of *Linnen v. A.H. Robins, et al.*, Middlesex County, No. 97-2307, hundreds of diet drug cases were filed against Indevus in courts throughout Massachusetts. These were collectively known as "Fen-Phen 1." By April 6, 2000, as a result of the large volume of pending diet drug cases, and by agreement between plaintiffs and defendants, Indevus and Wyeth, the Honorable Raymond J. Brassard, acting as Supervising Judge, entered a Stipulated Pre-Trial Order establishing *In re Massachusetts State Court Diet Drug Litigation*, Case No.: 98-5255 A, a consolidated docket for both pre-trial procedures, and trial over such cases. See PTO #2 attached as *Ex. 2*. In his supervision of the consolidated litigation Judge Brassard has demonstrated a willingness and ability to manage and advance the large-scale diet drug docket. Plaintiffs' case was consolidated with other diet drug cases before Judge Brassard.

During the pendency of the consolidated diet drug proceedings in Massachusetts, Wyeth filed cross-claims against Indevus, seeking contractual

2

and common-law indemnity against Indevus for any and all injuries sustained by the various plaintiffs. (*See Ex. 3*, In Re Diet Drug Litigation Docket, at 11-12). Assuming that Wyeth's cross-claims were filed in good faith, they are further evidence that plaintiffs' claims against Indevus are not "sham" proceedings.

Another action involving opt-out plaintiffs, *Sawyer v. Indevus Pharmaceuticals* (Civil Action No. 03-5028-B), is pending before Judge Brassard. Indevus has filed a motion for summary judgment on the ground that the statute of limitations has expired, and Wyeth, which is not a defendant in that case, has filed an amicus brief supporting Indevus' motion. The motion was set for hearing on June 16, 2004. Notably, Wyeth's argument for removal here is virtually identical to Indevus' argument for summary judgment in *Sawyer*. *See Ex. 4*, Indevus' memorandum of law in *Sawyer*.

## 2. Plaintiffs Allegations Against Indevus.

Wyeth opens its Notice of Removal with a lengthy – but irrelevant - effort to tar this action by recounting a selective history of other diet drug litigation in various parts of the country. Whatever the merits may have been of naming peripheral defendants in other cases, Wyeth acknowledges that Indevus played a central role in the developing and marketing of Redux. In a related action in Massachusetts Superior Court, Indevus itself has admitted that it had licensed the rights to manufacture and sell Redux in the United States, and that it sponsored the application to the FDA for approval of the use of Redux as a diet drug. *See Ex. 4*, Indevus' memorandum of law in *Sawyer*, p. 1.

Plaintiffs allege that Redux, developed by Indevus as an appetite suppressant, caused countless users, including plaintiffs, to sustain serious and sometimes fatal injuries including VHD, PPH and secondary pulmonary

3

hypertension. More specifically, plaintiffs allege that Indevus manufactured and marketed a dangerously defective drug and withheld, mischaracterized, and actively misrepresented reports and information in its possession which directly related to the risk of developing VHD and PPH. *See Ex. 1*, Complaint, at ¶¶ 89-117. Plaintiffs' complaint also describes the facts underlying their claims against Indevus in extensive detail. *Id.* at ¶¶ 16-116. Under these circumstances, any assertion that plaintiffs do not intend to fully litigate this claim against Indevus is meritless.

### 3. The National Class Action Settlement.

Redux was removed from sale in the United States on September 15, 1997, following publication of research which disclosed the high incidence of VHD and PPH suffered by consumers of the drug. Litigation against those responsible for this catastrophic sequence of events took place throughout the United States, including the Massachusetts Superior Court. In December of 1997, the Judicial Panel for Multidistrict Litigation transferred all the federal diet drug actions to the United States District Court for the District of Pennsylvania, creating Multidistrict Litigation 1203.

Wyeth began global settlement negotiations and the parties reached a tentative settlement agreement for a nationwide class. On August 28, 2000, the MDL court entered a final order certifying the class and approving the settlement. Under the terms of the settlement agreement, class members agreed to release Wyeth with the proviso that they were given "opt-out" rights at several points in time. This allowed class members who were initially asymptomatic to opt out at a later stage and pursue their claims against Wyeth in any otherwise proper forum once an injury manifested itself. In exchange for the

4

agreement by the opt-out plaintiffs not to pursue claims of punitive or multiple damages, Wyeth agreed not to assert statute of limitations defenses against these individual claimants. A comprehensive history of the class action litigation is given in *In Re Diet Drugs*, 2004 WL 1152824 (3 rd Cir. 2004), attached hereto as *Ex. 5*.

Plaintiffs have exercised their opt-out rights under the class settlement by filing this action after they were diagnosed with VHD within the last three years. Plaintiffs allege that they diligently attempted to discover any injury caused by their ingestion of the diet drugs by following the advice of their physicians. They did not discover their injuries until they had an echocardiogram which showed the presence of VHD. *See Ex. 1*, Complaint at ¶ 6. Nevertheless, Wyeth asserts that these claims are untimely with respect to the claims against Indevus, a Massachusetts defendant, which, unlike Wyeth, is not precluded from raising the statute of limitations defense.

## ARGUMENT

### 1. Fraudulent Joinder Standard.

Actions can be removed from state to federal court "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). When a resident party such as Indevus has been joined as a defendant, the party invoking removal jurisdiction of the federal courts bears a heavy burden. The removal statute must be strictly construed against removal and all doubts should be resolved in favor of remand. *See Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 4 (1st Cir. 1999) citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-109

(1941). This is consistent with the trend to limit removal jurisdiction. *See Getty Oil Corp. v. Insurance Co. of N. Am.*, 841 F.2d 1254, 1263 n.13 (5th Cir. 1988).

Under this rigorous standard, joinder is considered fraudulent only when there is no possibility that the plaintiff can prove a cause of action against the resident defendant. *Fabiano Shoe Company, Inc. v. Black Diamond Equipment, Ltd.*, 41 F. Supp. 2d 70, 71 (D.Mass. 1999), citing *Triggs v. John Crump Toyota, Inc.*, 154 F. 3d 1284, 1287 (11th Cir. 1998); *Burden v. General Dynamics Corp.*, 60 F. 3d 213, 216 (5th Cir. 1995). "**The plaintiff need** not have a winning case against the allegedly fraudulent defendant; he need **only have a possibility of stating a valid cause of action in order for the joinder to be legitimate.**" *Fabiano*, supra, at 71-72 (emphasis in original).

Wyeth cannot succeed in its removal effort unless it can show "by clear and convincing evidence, either that outright fraud has been committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that the plaintiff can state a cause of action against the non-diverse defendant in state court." *Mills v. Allegiance Healthcare Corp.*, 178 F. Supp. 2d 1, 5 (D.Mass. 2001), citing *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 207 (2nd Cir. 2001). Thus, in order to remand this case, plaintiffs need only establish one claim to be colorable against Indevus. This is a level of scrutiny even less searching than when a party seeks to dismiss a claim under Fed. R. Civ. P. 12(b)(6). *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3rd Cir. 1992). As long as any of plaintiffs' claims are not insubstantial or frivolous, this case must be remanded. *Id.* at 853.

Rather than rely upon its amicus brief in *Sawyer*, Wyeth improperly invokes federal jurisdiction over a resident defendant. This exceeds the proper use of the removal statute and should not be countenanced. "Perhaps they

6

should be given credit for their ingenuity, but it should not surprise them that a federal court, careful of its diversity jurisdiction, is, in the circumstances, unwilling to indulge the masquerade." *Mill-Bern Associates, Inc. v. Dallas Semiconductor Corp.*, 69 F. Supp. 2d 240, 246 (D.Mass. 1999)

**2. The Massachusetts Discovery Rule Precludes Removal In This Case.**

The sole basis for Wyeth's removal of this action is its unsubstantiated assertion that the applicable statute of limitations in this action has expired as to Indevus. However, as Wyeth is forced to acknowledge, Massachusetts has adopted a discovery rule that delays the running of the statute of limitations until the plaintiff learns that she has been harmed by the defendant's conduct: "Where injury is present but not discernible, or an injury is recognized but its cause is not ascertainable, accrual of the cause of action is held to be in abeyance until the time when a modicum of knowledge supplants ignorance in the mind of the claimant, or may be reasonably imputed to her." *Lioji v. Massachusetts Bay Transportation Authority*, 28 Mass. App. Ct. 926 (1990).

In paragraph 6 of the complaint, plaintiffs allege that they acted diligently in attempting to discover any injury caused by the ingestion of Redux, including following the advise of their physicians, and that they could not reasonably have discovered their injury until they had an echocardiogram showing VHD. *See* Complaint, *Ex. 1*. On its face, this allegation is sufficient to survive a 12(b)(6) motion. "[T]he question when a plaintiff knew or should have known of his cause of action is one of fact which in most instances will be decided by the trier of fact." *Riley v. Presnell*, 409 Mass. 239, 240 (1991). Wyeth fails to offer any evidence to rebut these allegations. For this reason alone, removal was

improper. In addition as argued below, plaintiffs' reasonable reliance is described in their affidavits.

    a.    **Wyeth Misstates The Discovery Rule.**

In order to avoid the consequences of plaintiffs' reasonable conduct prior to the discovery of their injuries, Wyeth mischaracterizes the discovery rule as triggering the statute of limitations when a plaintiff "knows she **may** have been harmed." Notice of Removal, ¶ 13 (emphasis added). However, knowledge of *possible* harm is not the test. The actual language in the cited case is: "we do require that a plaintiff have (1) **knowledge or sufficient notice that she was harmed** and (2) knowledge or sufficient notice of what the cause of harm was." *Bowen v. Eli Lilly & Co., Inc.*, 408 Mass. 204, 208, 577 N.E. 2d 739 (1990) (emphasis added). Indeed, the Supreme Judicial Court explained that so-called inquiry notice only arises in factual scenarios which are the opposite of those presented here. This is because the inquiry as to the cause of harm is only at issue for limitations purposes if the plaintiff is already aware of the harm itself:

> This case presents an aspect of the discovery rule with which this court has not previously been confronted. **Our prior cases have focused on the question whether, in given circumstances, the plaintiffs should reasonably have discovered that they had been harmed.** In each of these cases, there was no significant doubt concerning the cause of the harm once the plaintiffs discovered it. **In this case, on the other hand, the plaintiff was always well aware that she had sustained substantial physical harm.** The question is whether she was sufficiently on notice as to the cause of her physical harm.

*Id.* (emphasis added). In *Bowen*, the plaintiff was aware of her injury for 14 years before filing suit. For this reason, the Supreme Judicial Court focused upon the second prong of the discovery rule – whether the plaintiff had

8

reasonable notice of the *cause* of the harm. Unlike in *Bowen* and related cases, plaintiffs here were not aware of their injuries until recently and, hence, the *Bowen* analysis does not apply.

The courts have been particularly averse to requiring that plaintiffs file suit before the nature of their harm has become clear. "Not only does it offend fairness to require of claimants the gift of prophecy, cf. *Franklin v. Albert*, 381 Mass. at 618, but it is unsound judicial policy to encourage the initiation of law suits in anticipation that a grave disease will manifest itself pendente lite." *Gore v. Daniel O'Connell's Sons, Inc.*, 17 Mass. App. Ct. 645, 648 (1984). In its Notice of Removal, Wyeth runs afoul of this cautionary directive by asking this Court to impose upon plaintiffs a standard that would require that they file suit before being aware that they had suffered appreciable harm. For good reason, that is not the law in Massachusetts.

### b. Latency of Injury is Irrelevant.

Since Wyeth cannot succeed on the salient issue of when the plaintiffs discovered their injuries, it focuses upon what it argues is the non-latent nature of the injuries. This approach is incorrect for several reasons. First, it is not a relevant consideration under the discovery rule. Second, Wyeth relies upon an improper factual source for its latency argument.

Contrary to Wyeth's implication, the inquiry under the Massachusetts discovery rule is not when the injury occurred, but rather when the injury *could reasonably have been discovered* by the plaintiff. Wyeth's contention that VHD is not a latent injury simply has no bearing on that inquiry. Indeed, Wyeth has made similar contentions in other cases, to no avail. *See, e.g., Dykes v. Reeves,*

9

No. 2:03CV121PG (S.D. Miss. Nov. 6, 2003) (*See Ex. 6*). The *Dykes* Court explained:

> Defendants strongly argue that the MDL litigation has determined that valvular heart disease is not a latent disease and as such the parties in this case are bound by such finding. The fallacy of Defendant's argument in this regard is that the issue is not whether or not the condition is latent, but whether... the condition should have been found with "reasonable diligence." That is the issue. The issue is not whether or not the condition is latent. Whether Plaintiff should have discovered her condition prior to June 21, 2000, is a fact question.

*Dykes* at 6-7.

As argued in more detail in plaintiffs' opposition to Indevus' motion for summary judgment in *Sawyer*, VHD may be asymptomatic until long after the ingestion of Redux, even as harm may be occurring. *See Ex. 7*, Plaintiffs' Opposition at 11-15. Plaintiffs have alleged that they followed the advice of their doctors to determine whether they had been harmed by the ingestion of Redux. Wyeth does not claim otherwise. Under Massachusetts law, that is sufficient to postpone the accrual of plaintiffs' cause of action until the injury was actually discovered.

Plaintiffs' reliance upon the professional judgment of their physicians, as well as the advice of the U.S. Government, and all major medical societies, shows that plaintiffs have a more than colorable claim that their suit against Indevus is timely filed. *See Zamboni v. Aladan Corp.*, 304 F. Supp. 2d 218, 226 (D. Mass. 2004) (holding that plaintiff's reliance upon diagnosis of physicians created issue of fact precluding summary judgment on grounds of discovery rule); *Lindsay v. Romano*, 427 Mass. 771, 775 (1998) (holding that plaintiff reasonably relied on numerous medical opinions that failed to establish link between the defendant's

10

conduct and the plaintiff's injury); and *Castillo v. Massachusetts General Hospital*, 38 Mass. App. Ct. 513, 516 (1995) (holding that there was no basis for concluding that reasonable person would have discovered harm until physician interpreted his medical test results). Given the plaintiffs' reliance upon medical advice, Wyeth's claim that plaintiffs could have discovered their injuries by September 1997 had they gone to a doctor for "appropriate" testing merely raises an issue of fact. In this case, the plaintiffs' unrebutted allegation is that they each did exactly what the defendant and other authorities suggested they do – they consulted with their physicians.

   c.   **Plaintiffs' Reasonable Reliance Upon Medical Advice.**

Appropriately, the allegations in the complaint confirm plaintiffs' reliance upon the advice of their physicians, and their diligence in regular checkups during which their physician or health care practitioner would determine whether or not there was any heart damage. It was only in 2001 or 2002, when an echocardiogram was performed, that they learned of their injuries. The absence of any particularized contrary evidence from Wyeth is striking.

In this case, Wyeth has failed to present any evidence that even one of the plaintiffs failed to visit her physician to obtain an evaluation following her use of diet drugs. So too has Wyeth failed to present any support for the proposition that such a visit would have resulted in an echocardiogram that necessarily would have revealed FDA positive heart valve disease. It is noteworthy that Wyeth does not suggest that the plaintiffs' physicians' initial failure to discover valvular heart disease through auscultation, and their decision not to order an echocardiogram, was an unreasonable exercise of their professional judgment.

Under these circumstances there is at least a genuine issue of material fact as to whether VHD was reasonably discoverable by the plaintiffs any earlier than when it was ultimately diagnosed.

### d. Wyeth's Reliance On Court Findings On Latency Is Impermissible.

The core of Wyeth's statute of limitations argument is based upon findings by the MDL court in Pretrial Order 1415, 2000 WL 1222042 (E.D. Pa. 2000), which was drafted for the purpose of certifying and approving a nationwide settlement of the diet drug class action litigation. In the course of its memorandum, the MDL court made certain findings with respect to the latency of injuries caused by the ingestion of diet drugs. Those findings were subsequently relied upon by the successor MDL judge in a series of cases that Wyeth has attached to its Notice of Removal.

Wyeth's reliance upon the factual findings of the MDL court with regard to latency is in violation of the settlement agreement. As the Court of Appeals for the Third Circuit recently ruled after the removal of this case, the settlement agreement to which Wyeth was a party contained a provision that precluded any party in an unrelated judicial proceeding from relying upon any finding of fact made by the MDL court for the purpose of effectuating the settlement:

Section VIII.F.3 [of the settlement agreement] provides:

> **The Parties to the Settlement ... shall not seek to introduce** and/or offer the terms of the Settlement Agreement, any statement, transaction or proceeding in connection with the negotiation, execution or implementation of this Settlement Agreement, any statements in the notice documents appended to this Settlement Agreement, **stipulations, agreements, or admissions made or entered into in connection with the fairness hearing or any finding of fact or conclusion of law made by the Trial Court, or otherwise rely on the terms of this Settlement**, in any

12