> **judicial proceeding, except insofar as it is necessary
> to enforce the terms of the Settlement.**

*In Re Diet Drugs*, 2004 WL 1152824, *13 & n.9 (3 rd Cir. 2004) (emphasis added)
(vacating preclusive evidentiary rulings of the MDL court).

The Third Circuit Court held that the preclusion language of the
settlement agreement must "be strictly construed against those who seek to
restrict class members from pursuing individual claims." *Id.* at *12-*13. The
Court went on to hold that, because of the quoted language in the settlement
agreement, **"neither party can offer evidence regarding the settlement
agreement, including evidence regarding its negotiation or <u>implementation</u>."**
*Id.* at *14 (emphasis added). Wyeth is not referring to the MDL court's findings
on latency "to enforce the terms of the Settlement." Instead, it is improperly
attempting to prevent the plaintiffs from litigating an independent claim against
Indevus, which was not a party to the settlement. Thus, the only factual basis
for Wyeth's argument relies upon inadmissible evidence and should be
disregarded.

**e. Collateral Estopel Cannot Be A Basis For Fraudulent Joinder.**

Apart from ignoring the clear directive of the settlement agreement with
respect to findings of the MDL court, Wyeth goes further and claims that
plaintiffs are collaterally estopped from challenging those findings. In so doing,
Wyeth imputes too much to the findings in PTO 1415 and also overlooks
Massachusetts law, which precludes use of collateral estoppel where it would be
unfair.

As previously stated, the issue of latency is not relevant to the application
of the discovery rule in Massachusetts, because the court's findings on latency

have no bearing upon the plaintiffs' reasonable reliance on the advice of their physicians.    Accordingly, the application of collateral estoppel is not determinative of this case.

In any event, regardless of whether Wyeth's argument is regarded as offensive or defensive use of collateral estoppel, the relevant inquiry "is whether the party against whom it is asserted 'lacked full and fair opportunity to litigate the issue in the first action or [whether] other  circumstances justify affording him an opportunity to relitigate the issue.' " *Alba v. Raytheon Co.*, 2004 WL 1178314, *3 (Mass. 2004), quoting *Fidler v. E.M. Parker Co.*, 394 Mass. 534, 541, 476 N.E.2d 595 (1985).  *See also*, *Bar Counsel v. Board of Bar Overseers*, 420 Mass. 6, 1112 (holding that fact finder should be afforded wide discretion to determine whether it would be fair to apply collateral estoppel offensively).

In this case, a fact finder is likely to hold that it would be grossly unfair to collaterally estop the plaintiffs from litigating the issue of latency.  As the Third Circuit held, the "opt-out" provisions of the settlement agreement were intended to protect the rights of class members who became aware of their injuries after the execution of the agreement.  *In Re Diet Drugs*, 2004 WL  1152824, *12 (3rd Cir. 2004).  "In this case, important information for these potential class members included the availability, benefits and disadvantages of the intermediate opt-out. **This opt-out choice raises a significant issue of fairness...they can hardly knowingly waive some  of their tort rights without a clear notice of what they are waiving."** *Id*. (emphasis added).

Although the class notice and the settlement agreement describe in considerable detail the preclusive effects of the agreement, there is no mention that by agreeing to the settlement the plaintiffs were effectively waiving their

14

right of action against third parties such as Indevus. In fact, as stated above, the opposite is true. Class members were informed that no part of the deliberations involving the settlement could be used in other proceedings. "[D]ue process considerations counsel against binding absent potential class members to understandings that were not made express in the class notice or settlement agreement." *Id.* at *15.

The plaintiffs here had no reason to litigate the issue of latency at the time of the settlement hearing since they had no symptoms of harm. As plaintiffs pointed out in their opposition to Indevus' motion for summary judgment in *Sawyer*, there was evidence at the time of PTO 1415 that harm from Redux was latent. However, that evidence was not before the trial judge, and hence, the issue was not effectively litigated. *See Ex. 7*, Plaintiffs' Opposition at 20-23.

Furthermore, there was no notice to the plaintiffs that the issue of latency could not be contested in an independent hearing. The issue of fairness, which must be determined by a state court judge, precludes a finding of fraudulent joinder under the strict standards set out previously.

### e. Publicity of Potential Harm Does Not Trigger The Statute of Limitations.

Wyeth's reliance upon cases that have held that generalized publicity has put plaintiffs on notice of their claims is also misplaced. In each of these cases, none of which is binding authority in Massachusetts, either the publicity disclosed the actual harm, or the plaintiff was aware of an injury when publicity disclosed the cause of the injury. *See, e.g., **United Klans of Am. v. McGovern**,* 621 F. 2d 152 (5 th Cir. 1980) (civil rights claims disclosed by publicity). Here,

plaintiffs allege that they could not reasonably have discovered that they were harmed until long after any alleged publicity of the potential danger of Redux.

Under the discovery rule, mere notice of possibility of injury is not sufficient for a cause of action to accrue. A plaintiff must have reasonable notice of both the injury and the cause of the injury. Even assuming that plaintiffs became aware that they had unwittingly used a potentially dangerous drug, this awareness did not put any of them on notice that they had an actionable claim until they had evidence of appreciable harm. Although the plaintiffs were examined by their physicians repeatedly from 1997 onwards, the first indication of injury did not become manifest until 2001 or 2002. It was only then that each of the plaintiffs acquired the requisite knowledge of ascertainable harm that triggered the limitations countdown. This is far from the clear and convincing evidence Wyeth must put forth to survive plaintiffs' Motion to Remand.

### 3. **Class Tolling Applies.**

Although the Court need not reach this issue, the fact that the statute of limitations was tolled under the principle of equitable tolling provides an alternative and additional ground for granting plaintiffs' Motion to Remand. *See American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 554, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974); *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 353-354, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983). Despite numerous pages in its brief on the class action tolling issue, Wyeth fails to demonstrate either (1) that Massachusetts does not recognize class action tolling under *American Pipe;* or (2) that plaintiffs' claims would not be covered by any class action filed in Massachusetts or in another jurisdiction.

Under the fraudulent joinder standard, the court "must resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." *Batoff v. State Farm Ins. Co.*, 977 F. 2d 848, 852 (3 rd Cir. 1992), *quoting Boyer v. Snap-On Tools Corp.*, 913 F. 2d 108, 111 (3 rd Cir. 1990). Wyeth espouses the opposite standard by seeking to have this Court resolve in its favor any uncertainties or gaps in Massachusetts class-tolling law.

Contrary to Wyeth's arguments, Massachusetts has recognized the principles of class action tolling set out in *American Pipe* and *Crown Cork*. As stated by the Appeals Court in *Dicerbo v. Commissioner of the Dept. of Employment and Training*, 54 Mass. App. Ct. 128, n.13 (2002), "as to putative class members who wish to intervene, the statute of limitations is tolled upon the filing of the complaint," *citing* both *American Pipe* and *Crown Cork*.

The Supreme Judicial Court of Massachusetts has also adopted the holding of American Pipe in the context of class actions. *See Baldissari v. Public Finance Trust*, 369 Mass. 33 (1975). In *Baldissari*, the Court specifically stated:

> [W]e think he and others similarly situated may join in a class action to redress that injury and similar injuries caused by the same act or practice. Multiple demands for relief need not be filed on behalf of all the members of the class. If no reasonable tender of settlement is made in response to the first demand, further demands are not likely to serve any useful purpose and are not required. The modern class action is **'designed to avoid, rather than encourage, unnecessary filing of repetitious papers and motions.'** *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 550, 94 S.Ct. 756, 765, 38 L.Ed.2d 713 (1974).

*Id.* at 707 (emphasis in original).

Defendant's only citation to Massachusetts law regarding class action tolling in no way stands for the proposition for which it is cited, namely - that

17

Massachusetts does not recognize class tolling. *See Mass. Elec. Co. v. Mass. Comm'n Against Discrimination*, 375 Mass. 160, 165 n.2 (1978). The Court in that case merely decided that it need not reach that issue. In fact, by indicating that such a determination could be made, the *Mass Elec.* court implicitly recognized that Massachusetts had adopted the principles of *American Pipe*. Wyeth's briefing on this issue misses the mark in framing the issue as whether Massachusetts would recognize class action tolling.[1] This issue has already been answered in the affirmative by the Supreme Judicial Court in *Baldissari*.

Wyeth's lengthy discussion of class action tolling is but a further attempt to complicate the issues facing this Court and illustrates its failure to meet the required test for fraudulent joinder. "A claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction." *Batoff*, 977 F.2d at 853. Apart from the rule of *Baldissari*, the very complexity of Wyeth's argument dooms it to failure.

### 4. <u>This Court Should Not Stay A Ruling On Plaintiffs' Motion</u>

Wyeth has indicated that it will ask this Court to stay all proceedings, including any determination of whether federal jurisdiction exists, pending transfer of this case to the diet drug MDL 1203. Plaintiffs intend to oppose such a request for a stay, as it is contrary to the mandates of the Judicial Panel on Multi-

---

[1]    Wyeth addresses this argument by discussing whether Massachusetts courts would certifty a personal injury class action. However, the question of whether a class is ultimately certified is not dispositive of the issue of whether potential class members' claims would be tolled until such time as certification was denied.

District Litigation, the Manual for Complex Litigation[2], 3rd Edition, the diet drug MDL Court and federal law.

The case law supports a District Court's obligation to examine its own jurisdiction at the very outset. *See U.S. v. Hays*, 515 U.S 737, 742-744, 155 S.Ct. 2431, 2435 (1995) ("The court has an independent obligation to examine the petition for removal to determine if federal jurisdiction exists over the case."). This approach has been bolstered by a directive of the Judicial Panel on Multidistrict Litigation ("JPMDL") which instructs the various district courts to exercise their authority to rule on all motions addressing state law, including remand motions, rather than deferring to MDL-1203 for resolution. *See* February 20, 2004 letter from William Terrell Hodges, Chairman, to Involved Judges, Re: MDL-1203 (attached hereto as *Ex. 8*).[3]

The underlying rationale for Judge Hodges' directive may well be that a local district court is in a superior position to decide jurisdictional issues premised upon local law – in this case, Massachusetts and First Circuit law. The issue raised by the plaintiffs' motion to remand – whether plaintiffs claims against Massachusetts resident Indevus are barred by the Massachusetts statute of limitations - is not an issue that will be raised in cases transferred to the MDL court from around the country.

---

[2]    "The transferor court should not automatically . . . postpone rulings on pending motions . . . upon being notified of the filing of a motion for transfer. **Matters such as motions to dismiss or remand, raising issues unique to the particular case, may be resolved before the panel acts on the motion to transfer.**" Manual for Complex Litigation, 3d, at 31.131, p.288 (emphasis added).

[3]    Rule 1.5 of the Rules of of Procedure of the Judicial Panel on Multidistrict Litigation clearly establishes that "[t]he pendency of a motion, order to show cause, conditional transfer order . . . does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court." *See* Judicial Panel on Multidistrict Litigation Rule 1.5.

The MDL court has no special knowledge of Massachusetts law or expertise in the application of the Massachusetts discovery rule that would enable it to more effectively resolve the plaintiffs' motion to remand than this Court. Rather, **this Court**, and Judge Brassard, presiding over diet drug litigation in Massachusetts Superior Court, have a greater familiarity with Massachusetts law than the Pennsylvania District Court, and this Court is in a better position to quickly and efficiently decide plaintiffs' motion to remand. Indeed, the ruling by Judge Brassard on Indevus' motion for summary judgment in Sawyer, may well moot Wyeth's arguments *in toto*.

## CONCLUSION

As in *Mill-Bern Associates, Inc. v. Dallas Semiconductor Corp.*, 69 F. Supp. 2d 240 (D.Mass. 1999), Wyeth does not contend that the factual allegations of plaintiffs' complaint, if proven, fail to state an actionable claim. Instead, it relies upon evidence outside of the complaint that is either inadmissible or irrelevant. In addition, Wyeth is forced to rely upon unresolved and complex issues of state law. "It follows that if the Court would not grant summary judgment on the present record, it should not form the slightly more drastic conclusion that the claims against [Indevus] are so meritless that an inference of fraudulent joinder is warranted." *Id.* at 245. For the foregoing reasons, plaintiffs respectfully request that their Motion to Remand be GRANTED.

Respectfully submitted this 30th day of June, 2004.

IANNELLA AND MUMMOLO

BY: _Dante Mummolo_  DB

Dante G. Mummolo (BBO #360980)
Ianella and Mummolo
One Boston Place, Suite 3615
Boston, Massachusetts 02108
617-742-1388 telephone
713-225-0566 facsimile

ATTORNEYS FOR PLAINTIFFS

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served on the following attorneys of record on this 30th day of June, 2004:

Janice W. Howe
Bingham McCutchen, L.L.P.
150 Federal Street
Boston, MA 02110
617-951-8000

*Counsel for Defendants Wyeth and Wyeth Pharmaceuticals, Inc.*

Matthew J. Matule (BBO #632075)
Skadden, Arps, Slate, Meagher & Flom, L.L.P.
One Beacon Street
Boston, MA 02108

*Counsel for Defendants Indevus Pharmaceuticals, Inc. and Boehringer Ingelheim*

_Dante Mummolo_  DB

Dante G. Mummolo (BBO #360980)